1

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7

8                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   TIM CARRICO, SMALL PROPERTY
     OWNERS OF SAN FRANCISCO
11   INSTITUTE, and MARY FIGONE                     No. C 09-00605 WHA

12              Plaintiffs,

13        v.                                        **ORDER DISMISSING FIRST**
                                                    **AND FOURTEENTH**
14   CITY AND COUNTY OF SAN                         **AMENDMENT CLAIM**
     FRANCISCO,                                     **AND REMAINDER OF**
15                                                  **FEDERAL CASE**

16              Defendant.
                                        /
17

18                              **INTRODUCTION**

19        This action challenges San Francisco's Proposition M on federal and state law grounds.

20   Proposition M prohibits tenant harassment by landlords including the proscription of using

21   coercive tactics to get a tenant, living in a rent controlled apartment, to accept payment to

22   vacate the premises.  A prior order dismissed plaintiffs' federal substantive due process claim.

23   This order rejects plaintiffs' First and Fourteenth Amendment claim challenges.  The remaining

24   state law claims are better decided by the state court, so the entire action will be dismissed

25   without prejudice to re-file the state claims in state court.

26                               **STATEMENT**

27        The voters of San Francisco passed and approved Proposition M in the November 2008

28   elections.  Plaintiffs Tim Carrico, Small Property Owners of San Francisco, and Mary Figone

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  commenced this action to challenge that initiative.  SPOSF is a nonprofit association that

2  represents owners of residential properties in the San Francisco.

3       This action is nearly identical to a previously filed action in state court entitled *Larson v.*

4  *City and County of San Francisco*, San Francisco Superior Court Case No. 08-509083.  In

5  *Larson*, the state court concluded that Proposition M's definition of harassment — "with

6  ulterior motive or without honest intent" —  was too vague and therefore severed that

7  provision.  The state court also severed an attorney's fees provision.  Our plaintiffs raised here

8  the same claims that were decided in *Larson*, and added one federal claim and two state-law

9  claims.

10      On August 2, 2009, an order granted defendant's motion to dismiss a substantive due

11  process claim.  Since the only remaining federal claim, the First and Fourteenth Amendment

12  claim, appeared to be moot or insubstantial, the parties were ordered to show cause as to why

13  the claim should not be dismissed.  The parties have briefed their responses.  This order

14  analyzes those responses and holds that the remaining federal claim should be dismissed.

15  Supplemental jurisdiction will not be expanded upon the remaining state law claims inasmuch

16  as the state courts are better suited to resolve them.

17                                          **ANALYSIS**

18      **1.**      **RES JUDICATA AND APPLICATION OF LARSON.**

19      Plaintiffs argue that any provisions severed in *Larson* should not be severed for the

20  purposes of this case because res judicata does not apply.  This Court, however, has already

21  determined that Proposition M should be analyzed "as it now stands" (Dkt. No. 41).   Thus, this

22  order need not and will not address any arguments made concerning the already-severed

23  phrases "with ulterior motive" and "without honest intent."

24      **2.**      **FIRST AMENDMENT COMMERCIAL SPEECH ANALYSIS.**

25              **A.**      **Level of Scrutiny.**

26      Plaintiffs assert that Sections 37.10B(a)(6) and (7) of Proposition M restrict more than

27  commercial speech because they penalize speech regardless of whether the speech is motivated

28  by economic considerations.  The Supreme Court, has articulated that commercial speech is

United States District Court

For the Northern District of California

speech that "does no more than propose a commercial transaction." *Bolger v. Young Drug Prods. Corp.*, 463 U.S. 60, 66 (1983).[1]  Both sections at issue refer to speech by a landlord wherein the landlord is proposing that a tenant take a payment in return for leaving the premises.  Such speech is not speech that fulfills any of the traditional functions of speech given heightened constitutional protection such as speech discussing science, art, morality, newsworthy events, or advancement of the democratic process.  *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council Inc.*, 425 U.S. 748, 762 (1976).  Commercial speech does nothing more than propose a commercial transaction.

Plaintiffs invoke *Baba v. Board of Supervisors of San Francisco*, 21 Cal. Rptr. 3d 428 (Cal. Ct. App. 2004), wherein an ordinance also dealing with landlord-tenant relations was held to be noncommercial.  *Baba*, 21 Cal. Rptr. 3d. at 437–38.  The ordinance in *Baba*, however, was much broader than the ordinance at hand.  In this case, both sections at issue only regulate the speech of a landlord or his agent involving an offer of payment to a tenant to vacate the premises (Def. Exh. 1 at 256).  By contrast, the sections of the ordinance in *Baba* made no reference to payments.  *Baba*, 21 Cal. Rptr. 3d at 432.  The *Baba* ordinance involved any speech by a landlord wherein the landlord was requesting that a tenant move from the premises for a reason not enumerated in the ordinance.  *Ibid.*  In *Baba*, the court gave examples wherein the ordinance might be implicated without any commercial component.  *Id.* at 520.  The court also gave as a specific example of commercial speech, the example of a landlord requesting the tenant to leave in exchange for payment.  *Ibid.*  This example is precisely the example that is being regulated by the Sections 37.10B(a)(6) and (7) of Proposition M.  Thus, plaintiffs' reliance on *Baba* is misguided inasmuch the *Baba* court would correctly support a finding that the narrower language of the sections at issue should be scrutinized as mere commercial speech.

Plaintiffs' also say that commercial speech must be confined economic interests of the speaker and his or her audience.  Plaintiffs argue that speech by a landlord's agent may be noncommercial inasmuch that person may have no economic interest in removing the tenant.  In *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S.

---

[1] Unless otherwise indicated, internal citations and quotations have been omitted throughout this order.

557, 562 (1980),  the Supreme Court did first define commercial speech as "expression related solely to the economic interests of the speaker and its audience."   The Supreme Court, however, did not state this was the only definition and, in fact, later in *Central Hudson* referred to commercial speech as that which "proposes a commercial transaction."  447 U.S. at 562.  So too in *Board of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 473–74 (1989) (stating that examining whether speech proposes a commercial transaction is the test to identify commercial speech).

### B.     Application of the Central Hudson Test.

Given that we are concerned with commercial speech, we must apply the four-part test set forth in *Central Hudson*. The first step asks whether the First Amendment protects the expression.  To be protected, speech must concern lawful activity and not be misleading. The second step asks whether the asserted governmental interest is substantial.  If the answers to the first two questions are yes, the third step asks whether the regulation directly advances the governmental interest asserted.  The fourth step asks whether the regulation is no more extensive than necessary to serve the interest.  *Cental Hudson*, 447 U.S. at 566.  It is well established that "[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it."  *Edenfield v. Fane*, 507 U.S. 761, 770 (1993).

### C.     Prong One — Speech Concerns Lawful Activity And Is Not Misleading.

Defendant has not presented any argument that the speech being regulated is not deserving of any First Amendment protection due to the speech being illegal or misleading commercial activity.  Thus, this prong is satisfied.

### D.     Prong Two — Substantial Government Interest

Defendant argues that San Francisco's interest in protecting its residents from harassment and practices that undermine the purposes of rent control by driving tenants out of their homes, is a substantial government interest.

Section 37.10B(a)(6) serves to address threatening coercive tactics landlords may use against tenants to get tenants to vacate the premises.  Defendant states that Proposition M was drafted to respond to increasing reports of harassment directed at tenants protected by rent

4

United States District Court
For the Northern District of California

1   control (Def.'s Resp. to Order to Show Cause 1).  Other courts have found such an interest to be

2   substantial.  *Baba*, 21 Cal. Rptr. 3d at 439 ("Appellants have a substantial interest in preventing

3   San Francisco landlords from evading regulation under the rent ordinance."); *Action Apartment*

4   *Ass'n, Inc. v.  City of Santa Monica*, 163 P.3d 89, 97 (Cal. 2007) ("We recognize that the City

5   enacted its Tenant Harassment ordinance for the legitimate government purpose of protecting

6   the City's residents from abuse by landlords.").  Even the opponents of Proposition M did not

7   dispute that the harassment of tenants was something that should be regulated by the

8   government (Def. Exh. 1 at 170).

9        Similarly, Section 37.10B(a)(7) serves to protect tenants from solicitations they have

10   already requested in writing not to receive.  San Francisco asserts that it has a substantial

11   interest in protecting tenants from intrusions on their privacy and abusive solicitations from

12   landlords.  The Supreme Court has held that the government has a substantial and justifiable

13   interest in regulating speech "directed primarily at those who are presumptively unwilling to

14   receive it."  *Frisby v. Schultz*, 487 U.S. 474, 488 (1988).  This section is regulating conduct

15   similar to that which has already held to be a substantial government interest.  *See Edenfield*,

16   507 U.S. at 768–69 (stating that the court has explicitly found a substantial government interest

17   in regulations that protect the public from solicitation that is pressed with such "frequency or

18   vehemence as to intimidate, vex, or harass the recipient").  In *Hill v. Colorado*, 530 U.S. 703

19   (2000), the Supreme Court called the unwilling listener's interest in avoiding unwanted

20   communication part of the broader right to be let alone that Justice Brandeis had previously

21   described as "the right most valued by civilized men." 530 U.S. at 716–17 (2000).

22   Furthermore, landlord-tenant communication often takes place at the home of the tenant.

23   Protecting the well-being, tranquility, and privacy within the home has been held to be a

24   substantial government interest.  *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 627 (1995).

25   Thus, this order finds that preventing tenant harassment is a substantial government interest.

26          **E.     Prong Three — Material Advancement.**

27        San Francisco has the burden of showing that the ordinance directly advances the goal

28   of controlling tenant harassment.  "This burden is not satisfied by mere speculation or

United States District Court

For the Northern District of California

conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Greater New Orleans Broadcasting Assn., Inc. v. United States*, 527 U.S. 173, 188 (1999).  Such a standard, however, may be satisfied by reference to other locales or based solely on reference to history, consensus, or common sense.  *Ibid.*

Proposition M contains a statement approved by the San Francisco Board of Supervisors stating that the proposition was needed inasmuch as the laws then existing where not giving tenants sufficient protection against landlords harassing tenants (Def. Exh. 1 at 170).  The City Attorney and District Attorney had both filed law suits against landlords (Def. Exh. 1 at 171). Such harassing behavior was not unique to San Francisco inasmuch other locales have had to enact similar protections.  *See Action Apartment*, 163 P.3d at 93 (Cal. 2007) (citing to statistical information showing that tenant harassment had increased since the implementation of rent control).  Opponents to the proposition did not deny that such a harm existed (*See* Def. Exh. 1 at 170–71).

Sections 37.10B(a)(6) and (7) both alleviated tenant harassment.  Section 37.10B(a)(6) addressed landlords who attempt to coerce tenants to leave by offering payment in a threatening or intimidating manner.  Section 37.10B(a)(7) addressed landlords who continue to offer payment to a tenant despite the tenant requesting no such communication.  In fact, all the provisions of Section 10B(a) regulate the various ways in which a tenant may be harassed by a landlord.  The ordinance is aimed at such harassment by allowing a landlord to civilly or criminally be penalized for violating the ordinance (Def. Exh. 1 at 256-57).

### F.     Prong Four — A Tailored Fit.

San Francisco has the burden to show that the regulation is narrowly tailored to achieve the stated purpose.  *Central Hudson*, 447 U.S. at 564.  "[T]he least restrictive means is not the standard; instead, the case law requires a reasonable fit between the legislature's ends and the means chosen to accomplish those ends, . . . a means narrowly tailored to achieve the desired objective."  *Lorillard Tobacco*, 533 U.S. 525, 556 (2001).

United States District Court

For the Northern District of California

1    Defendant asserts that Sections 37.10B(a)(6) and (7) are both narrowly tailored.

2  The ordinance in *Baba* was held to not be narrowly tailored because it burdened speech that

3  did not cause the harm the ordinance was enacted to prevent.  *Baba* at 440.  For example, a

4  landlord who, in the heat of passion, requested a tenant to move out during a heated argument

5  despite not having a present intent to evict the tenant, would violate the *Baba* ordinance.  In this

6  case, however, Section 37.10B(a)(6) only prohibits offering payments when such offers are

7  "accompanied by threats or intimidation," and are made in bad faith.  This only burdens speech

8  that directly harms a tenant.  A landlord who makes such an offer in a good-faith manner would

9  not be penalized.

10    Plaintiffs argue that Section 37.10B(a)(6) is not narrowly tailored as it

11  unconstitutionally burdens protected speech because it may regulate a threat despite the threat

12  not rising to the level of illegal conduct.  Plaintiffs, however, ignore that the speech is only

13  regulated when accompanied by offers to pay thereby placing such communication in the realm

14  of commercial speech.  Commercial speech receives less constitutional protection than

15  noncommercial speech.  *Virginia State*, 425 U.S. at 762.  Regulations of commercial speech

16  may burden otherwise lawful communication.  This is evidenced by the fact that the first prong

17  of the *Central Hudson* test inquires whether the regulated speech is lawful in the first place.

18  *Cental Hudson*, 447 U.S. at 566.  If it is not, it is not deserving of protection.

19    Concerning Section 37.10B(a)(7), defendant argues that it is narrowly tailored inasmuch

20  as it prohibits landlords from offering payment to tenants only after the tenant as requested, in

21  writing, that the landlord stop making such offers.  This limitation does not burden any speech

22  beyond that which is necessary to protect the privacy interests of the tenant discussed above.

23  "Nothing in the Constitution compels us to listen to or view any unwanted communication,

24  whatever its merit . . . ."  *Rowan v. United States Post Office Dep't*, 397 U.S. 728, 737 (1970)

25  (holding that a law allowing individuals to opt-out of receiving certain types of mail is

26  constitutional).

27    Plaintiffs' cite to *Cohen v. California*, 403 U.S. 15, 21 (1971), for the proposition that

28  there is no right not to hear disapproved speech.  In *Cohen*, the Supreme Court did say that a

person may not be protected from unwanted speech outside the realm of the home, however, the Court was concerned that the actor in that case would not be on fair notice as to the prohibited speech. *Cohen*, 403 U.S., at 19, 21 n.4. This differs from the present case in two ways. *First*, it is unlikely that landlord-tenant communications will occur outside of the home, a protected privacy zone. *See Florida Bar,* 515 U.S. at 627. *Second*, in the event that it does, unlike in *Cohen*, the speaker in this case, the landlord, would be on written notice that the tenant does not want any further communication concerning offers of payment to vacate. Thus, the notice concerns in *Cohen* are not present in this case**.**

This order holds that San Francisco has carried its burden is showing that the city has a substantial interest in regulating the proscribed behavior and that the ordinance materially advances that goal in a narrowly tailored fashion. This all concerns a facial challenge. While this order sustains Proposition M against plaintiffs' facial challenges, it may conceivably be unconstitutional as applied in various attempted ways in the future.

**2.    VAGUENESS ANALYSIS.**

Plaintiffs argue that Sections 37.10(B)(a)(6) and (7) of Proposition M are unconstitutionally vague. The Superior Court has already determined that Proposition M as it *now* stands is constitutional (Def. Ex. B at 1).

 A statute may be vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits[,] . . .[or] if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). The terms of a statute are to be interpreted in context and not in the abstract. *American Commc'ns Ass'n v. Douds*, 339 U.S. 382, 412 (1950). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1984). In fact, the constitution must tolerate a certain amount of vagueness. *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.2d 1141, 1151 (9th Cir. 2001).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Plaintiffs argue that the phrase "bad faith" is vague.  The Superior Court, however,

2    correctly pointed out that, "the phrase 'Bad Faith' enjoys such common usage as to overcome

3    any vagueness concerns" (Def. Ex. B at 1).

4    Plaintiffs argue that the phrase bad faith is confusing since a landlord who acts in good

5    faith but in a threatening or intimidating manner would not be penalized.  As defendant points

6    out, however, this is not confusing.  The bad faith requirement is a shield for landlords who may

7    act in a threatening or intimidating manner without meaning to do so.  Even plaintiffs' asserted

8    definition of bad faith, "[a] conscious doing of a wrong . . .," clearly exemplifies that a landlord

9    would consciously be acting in the proscribed manner if they are to be penalized; meaning the

10   landlord knows that the behavior is threatening or intimidating (Pls.' Reply Supp. Prelim. Inj.

11   Mot. 12).  In that case, the landlord would not be confused as to whether he or she is acting in

12   bad faith.

13   Plaintiffs argue that the phrases "threats", "intimidation", and "offers of payment" are

14   vague.  All of these words, however, have meanings that a person of ordinary intelligence

15   would understand.  Plaintiff has not provided any argument as to why the phrase "offers of

16   payment" would be unclear to the ordinary person, in the context of landlord-tenant relations.

17   Also, the ordinary person would understand what threatening or intimidating behavior is.

18   Plaintiffs argue that the phrases "intimidating" and "harassing" are not vague in the

19   context of protecting women entering abortion clinics.  They then reverse field and suggest

20   that "intimidating" and "threatening are vague in the context of landlord-tenant relations.

21   This hair-splitting is rejected.  Plaintiffs further assert that there is confusion because it is not

22   clear whether a threat must be "physical."  There, however, is no reason to assume such a

23   limitation.  Section 37.10B(a)(8) explicitly proscribes words and gestures that "[t]hreaten the

24   tenant . . . with physical harm."  By contrast, Section 37.10B(a)(6) proscribes offers to pay that

25   are "accompanied with threats."  If Section 37.10B(a)(6) was to only apply to threats of

26   physical harm, the drafters would have said so as they did in Section 37.10B(a)(8).  Plaintiffs

27   argument fails to show why the terms are vague in this context and not in the context of

28   protecting women entering an abortion clinic.

9

United States District Court

For the Northern District of California

1    None of the decisions cited explain why all the disputed terms are vague in this context.

2   Furthermore, the United States and California Supreme Courts have both upheld statutes with

3   similar language.  *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 760-61 (1994)

4   (prohibition against "intimidating, harassing, touching, pushing, shoving, crowding or

5   assaulting person entering or leaving" an abortion clinic upheld as constitutional); *People ex*

6   *rel. Gallo v. Acuna, 14 Cal.4th 1090, 1118 (1997)* (hold that the words  "confront," "annoy,"

7   "provoke," "challenge," or "harass" were not unconstitutionally vague).  Like *Larson*, this order

8   holds that none of the terms in Sections 37.10B(a)(6) or (7) are unconstitutionally vague in the

9   context in which they are presented.

10      **3.      FIRST AMENDMENT RIGHT TO PETITION.**

11      Plaintiffs argue that Sections 37.10B(a)(6) and (7) violate the right to petition

12   because landlords *may* be penalized for engaging in pre-litigation settlement negotiations.[2]

13   The *Neorr-Pennington* doctrine provides that those who petition the government are "generally

14   immune from statutory liability for their petitioning conduct."  *Sosa v. DIRECTV Inc.*, 437 F.3d

15   923, 929 (9th Cir. 2006).  Pre-litigation settlements have been found to be part of the right to

16   petition.  *Columbia Pictures Indus. Inc. v. Prof'l Real Estate Investors Inc.*, 944 F.2d 1525,

17   1528 (9th Cir. 1991).

18      In their reply, plaintiffs do not argue that the sections in dispute are unconstitutional

19   as applied to plaintiffs.  Instead, plaintiffs abstractly argue that the sections in dispute are

20   unconstitutional on their face (Pls.' Reply to Show Cause 11).  A facial challenge requires

21   the challenger to show that the statute is "unconstitutional in every conceivable application[]

22   or . . . it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally

23   overbroad."  *Sosa*, 437 F.3d 923 at 929.  Plaintiffs' argument fails on both grounds.

24      *First*, if a landlord is not contemplating litigation and merely wants to harass a tenant by

25   continuing to offer to pay a tenant to move out, in a threatening manner, despite the tenant

26   asking the landlord not to, this would not implicate the right to petition.  In this example, there

27   _____

28   [2] Plaintiffs' arguments concerning Sections 37.10B(A)(11), 37.10B(A)(12), are 37.10B(c)(3) are not
being addressed as plaintiffs' complaint does not state these claims and plaintiffs have not received leave to
amend.

is no connection to any litigation.  Thus, a constitutional application of the sections in dispute is conceivable.

*Second*, the overbreadth analysis, giving a challenger the right to facially attack a statute, does not apply to commercial speech.  *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 497–98 (1982).  Even if overbreadth analysis was applicable, there is no indication that these sections are overwhelmingly being applied to landlords who are offering payments to settle a valid dispute thereby implicating the right to petition.  Overbreadth must be substantial and is not a plausible challenge just because one can conceive some impermissible applications.  *Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 800 (1984).

Even if an as-applied challenge was considered, the sections in dispute would still be constitutional.  *Neorr-Pennington* is a rule of statutory construction that allows a court to interpret a statute in a way that avoid constitutional problems.  *Sosa*, 437 F.3d at 930, 932 n.6, 939.  This doctrine has been applied to narrow the interpretation of a statute in order to not burden the right of petition despite the plain language of the statute potentially doing so.  *Id.* at 939.  Thus, a court may narrow the interpretation of the sections in dispute if an as-applied challenge was made.  For example, a court may find that the phrase "bad faith," in the context of litigation, refers to sham litigation, meaning the landlord's lawsuit would be objectively baseless and brought for an unlawful motive.  *Id.* at 938.  *Noerr-Pennington* does not apply to sham litigation.  In those cases, the sections in dispute would protect tenants from landlords who threaten suit and keep attempting to settle with the tenant despite having a meritless claim.  Thus, an as-applied challenge would fail since the sections may be narrowly construed to avoid burdening the right to petition.

**CONCLUSION**

Plaintiffs' First and Fourteenth Amendment challenge does not state a claim.  No federal claim is left.   Accordingly, this case is dismissed as the state courts are better suited to decide the remaining state claims.   The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  September 4, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE